[L. A. No. 16146. In Bank.—July 27, 1937.]

ELLA HARRIET SCOTT et al., Petitioners, v. INDUS-TRIAL ACCIDENT COMMISSION et al., Respondents.

James E. Martin, Clifton Hildebrand, Louis E. Goodman and Louis H. Brownstone for Petitioners.

Paul Blackwood, as *Amicus Curiae* on Behalf of Petitioner.

E. A. Corten, Emmet J. Seawell, E. E. Bennett, Malcolm Davis and Edward C. Renwick for Respondents.

SHENK, J.—The petitioners are the widow and minor child of Samuel B. Scott, who, on June 21, 1935, was run over and .killed by a switch engine beneath which he fell while engaged in switching operations in the employ of the respondent, Harbor Belt Line Railroad. That railroad is an agency through which the respondents, Atchison, Topeka & Santa Fe Railway Company, Los Angeles & Salt Lake Railway Company (now Union Pacific Railroad), Pacific Electric Company, and Southern Pacific Company, jointly conduct intrastate and interstate freight terminal operations at Los Angeles Harbor at San Pedro. The respondent commission found that death was caused by injuries arising out of and in the course of the decedent's employment, and that both employer and employee were subject to the provisions of the Workmen's Compensation Insurance and Safety Act of California (Stats. 1917, chap. 586, as amended). It accord-

ingly made an award of the death benefit and burial expenses as provided by the statute.

The petition for review herein is by the beneficiaries of the award. They allege that the application before the commission was filed by the petitioners under the mistaken belief and because of the representation of the employer respondents that the decedent was subject to the California Workmen's Compensation Act; and that without consulting counsel the widow signed a stipulation submitting the matter to the Industrial Accident Commission. On the hearing objections were made by the petitioners to the exercise of jurisdiction by the commission on the grounds: (1) that both employer and employee were engaged in interstate transportation at the time of the injury; and (2) that the injury occurred as a result of a violation by the employer of the Federal Safety Appliance and Boiler Inspection Acts (sec. 23, 45 U. S. C. A.; chap. 355, sec. 2, 43 Stats. 659.) A petition for rehearing based on the same ground was denied by the commission.

There is no dispute about how the accident occurred. Scott was stepping down onto the rear footboard of Engine No. 1166 while it was in motion. His foot slipped and he fell under the wheels. The evidence showed that the footboard was worn and a bolt exposed for a distance of four or five inches, so that it might be said to have been in a defective and unsafe condition within the meaning of the Boiler Inspection Act.

Just before the accident occurred Scott was proceeding on said switch engine to the Trona field warehouse spur track to pick up and return with two empty freight cars. One of those cars admittedly was not used in interstate transportation. The other was Rock Island No. 262365, a foreign line car, which had arrived on the morning of June 17, 1935, via the Union Pacific Railroad at San Pedro from Buffalo, New York, with a load of folding steel cots. It was while the switch engine was backing toward the empty freight cars on the Trona spur track, and was about 200 feet distant therefrom, that the decedent lost his footing by reason of the defective footboard.

It is contended that the question whether the operation in which the decedent was engaged was intrastate or interstate in character is material to the question of whether the commission had jurisdiction to make an award, and that, in fact,

it was related to interstate rather than intrastate transportation. The contention is also made that whether the operation was intrastate or interstate in character, the remedy is by an action at law, when death was caused by a violation of the Boiler Inspection Act.

It is urged that because the Rock Island car was a foreign line car and its ultimate destination on the return trip was a point beyond the state of California, the movement of the switch engine was in interstate transportation. The record supports the conclusion that the movement was in intrastate transportation within the rule of the following cases: *Schauffele* v. *Director General of Railroads*, 276 Fed. 115; *Philadelphia & R. Ry. Co.* v. *Cannon*, 296 Fed. 302; *Shauberger* v. *Erie R. Co.*, 25 Fed. (2d) 297; *Chicago Junction Ry. Co.* v. *Industrial Board*, 277 Ill. 512 [115 N. E. 647]. The evidence sustains the view that the immediate purpose of the switching operation was to pull out the two "empties" and replace them with two loaded cars for purposes of unloading them; that the "empties" were to be pulled to the San Pedro yard; and that there were standard instructions to return any empty foreign line car to the member line on which it was brought in, but that if there was a load which could be carried by it on its homeward route, destined for any point either within or without the state, the car was loaded and then started on its homeward journey. However, before the time it is to commence its homeward journey is ascertained, or whether it is to be started on its journey empty or with a load is known, several yard switching operations and movements are required. It was not designated or known at the time Scott received his instructions when the car was to commence its journey or whether it was to commence with a load, or where any such load might be consigned. As a matter of fact, it was later "spotted" at a fish cannery in East San Pedro and loaded, and it left the fish cannery yard on June 27th routed by the Union Pacific for Oklahoma City.

The cases hereinabove cited are authority for the conclusion that under the facts herein presented the empty Rock Island car was about to be moved for a purpose purely local and not connected with interstate transportation. In *Shauberger* v. *Erie R. Co., supra,* it was held that the "spotting" of empty cars which had not yet been assigned for further

interstate transportation, was an intrastate movement. The conclusion herein is consistent with the cases relied on by the petitioners, and with such decisions as *Erie Railroad Co.* v. *Welsh,* 242 U. S. 303 [37 Sup. Ct. 116, 61 L. Ed. 319], and *Illinois Central R. R. Co.* v. *Behrens,* 233 U. S. 473 [34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163], holding that the mere expectation that the car might be engaged in interstate commerce is not alone sufficient to lend that character to the immediate operation which but for the expectation it would not have. The distinction noted was definitely recognized in the case of *Mappin* v. *Atchison, Topeka etc. Ry. Co.,* 198 Cal. 733, 739 [247 Pac. 911, 49 A. L. R. 1330], (*certiorari* denied, 273 U. S. 729 [47 Sup. Ct. 239, 71 L. Ed. 862]).

The Boiler Inspection Act makes it unlawful for any carrier to use or permit to be used on its line any locomotive, unless such locomotive, its boiler, tender and all parts and appurtenances thereof, are in proper condition and safe, and able to withstand such tests as may be prescribed. The act applies to all locomotives used on a highway of interstate commerce. The act defines the duty, and the breach thereof is established whenever a violation of the act causes injury or death whether the injured person was then engaged in an employment pertaining to interstate or intrastate commerce. (*Moore* v. *Chesapeake & O. Ry. Co.,* 291 U. S. 205, 213, 214 [54 Sup. Ct. 402, 78 L. Ed. 755] ; *Tipton* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 298 U. S. 141 [56 Sup. Ct. 715, 80 L. Ed. 1091, 104 A. L. R. 831].) It is assumed, in accordance with the stipulation of the parties, that the locomotive here involved was one that was in use on a highway of interstate commerce, and therefore that the Boiler Inspection Act governed.

The petitioners contend that their remedy is by action for wrongful death pursuant to section 377 of the Code of Civil Procedure. They rely on the cases of *Ballard* v. *Sacramento Northern Ry. Co.,* 126 Cal. App. 486 [14 Pac. (2d) 1045, 15 Pac. (2d) 793], and *Walton* v. *Southern Pac. Co.,* 8 Cal. App. (2d) 290 [48 Pac. (2d) 108], in each of which a petition to have the cause heard in this court was denied.

In the Ballard case the plaintiff administratrix had judgment in an action at law. The employee's death had been caused by a defective brake, which defective condition was a violation of the Federal Safety Appliance Act (chap. 196, 27

Stats. 531). After noting that section 56, 45 U. S. C. A. (chap. 149, sec. 6, 35 Stat. 66; chap. 143, sec. 1, 36 Stat. 291, Employers' Liability Act), provided for concurrent jurisdiction of the federal and state courts over cases arising under the chapter and that it was not necessary that the employee, to recover for a violation of the act be actually engaged in interstate transportation so long as the employer was a carrier of interstate traffic, the court rejected the contention that the Workmen's Compensation Act applied. It based its conclusion on section 69, subdivision (c) of the act providing that the act shall not apply "to employers or employments which, according to law, are so engaged in interstate commerce as not to be subject to the legislative power of the state, or to employees injured while they are so engaged, except in so far as this act may be permitted to apply under the provisions of the Constitution of the United States or the acts of congress". The court there was of the opinion that the exclusion provisions of the section applied whenever it was shown that the employer was a carrier of interstate traffic, that is, that the employer was subject to the provisions of the safety appliance acts. The judgment for the plaintiff was affirmed.

In the case of *Walton* v. *Southern Pac. Co., supra,* the plaintiff administratrix filed an action for damages for the wrongful death of an employee. In one count she alleged a violation of the Boiler Inspection Act. In others she sought recovery under the Federal Employers' Liability Act. The court held that the employee was not performing duties which were a part of interstate transportation and therefore recovery could not be had under the Employers' Liability Act. In discussing the contention that the alleged cause of action under the Boiler Inspection Act was barred by the statute of limitations, the court reviewed the decisions in the cases of *Moore* v. *Chesapeake & O. Ry. Co.,* 291 U. S. 205 [54 Sup. Ct. 402, 78 L. Ed. 755], and *Gilvary* v. *Cuyahoga Valley Ry. Co.,* 292 U. S. 57 [54 Sup. Ct. 573, 78 L. Ed. 1123], to the effect that the safety appliance acts did not prescribe the remedy of a person injured by reason of the violation thereof, but left the remedy to the applicable state law. In that discussion the District Court of Appeal merely assumed that the applicable state law for death caused by breach of duty under the facts was section 377 of the Code

of Civil Procedure. In stating its conclusion that the Workmen's Compensation Act was not the remedy of the plaintiff, that court, following the Ballard case, likewise considered it sufficient that the accident happened on a highway of interstate commerce. In arriving at this conclusion the District Court of Appeal took no notice of the effect of the Supreme Court's affirmance of the Circuit Court of Appeal's reversal of a judgment for the plaintiff in *Gilvary* v. *Cuyahoga Valley Ry. Co., supra,* a case involving intrastate transportation and a violation of the Safety Appliance Acts, on the ground that the submission of the cause for an award under the Ohio elective Workmen's Compensation Act was not repugnant to the federal statute.

Any doubt or misconception that may have existed when the Ballard and Walton cases were decided as to the applicable remedy under the Safety Appliance and Boiler Inspection Acts, at least as to injury or death arising out of intrastate employment, has now been set at rest by the decision in the case of *Tipton* v. *Atchison, Topeka & Santa Fe Ry., supra.* In that case the employee filed an action in the superior court of this state to recover damages for injuries suffered by reason of an alleged violation of the federal Safety Appliance Act. Upon the removal of the action to the federal District Court a demurrer to the complaint was sustained because of the absence of an allegation that at the time of the injury the employee was engaged in interstate commerce. The question for determination by the Supreme Court in that case was whether it was the law of this state that the Workmen's Compensation Act was not the applicable statute to provide compensation for injuries occurring by a violation of the safety appliance acts when the employee was engaged in performing duties pertaining to intrastate transportation. The court (at pp. 148, 149) stated: "California is at liberty to afford any appropriate remedy for breach of the duty imposed by the Saftey Appliance Act. Her choice in the matter raises no federal question and the federal courts are as much bound as those of California to conform to the remedial procedure she has adopted. There is nothing to prevent her prescribing workmen's compensation, elective or compulsory, in lieu of a common law or statutory action for disability or death arising from a breach of

the duty imposed.'' After reviewing the decisions in the Ballard and Walton cases, *supra*, the court said (pp. 151 et seq.) : ''If these decisions of intermediate courts of appeal, and the refusal of the Supreme Court of California to review them, amount to no more than a judicial construction of the Compensation Act as having, by its terms, no application in the circumstances, they are binding authority in federal courts. If, on the other hand, the state courts excluded railroad employees injured in intrastate operations from the benefits of the compensation act, not as a matter of construction of the statute, but because they thought the Safety Appliance Acts required the state to afford a·remedy in the nature of an action for damages, then the court below was right in disregarding that erroneous construction of the federal acts.

''In the Ballard case the court thought the Safety Appliance Acts, in addition to imposing a duty, afforded a remedy, and to deny that remedy would be to disregard the mandate of the federal statutes. It was proper, in this view, to construe the language of the compensation act accordingly. In the Walton case, while holding the Boiler Inspection Act irrelevant upon the question of the appropriate remedy, the court denied the application of the workmen's compensation law, upon the authority of the Ballard case.

''The Supreme Court of the State refused to review either of the cases although this court had recently defined the scope of the Safety Appliance Acts in the Moore and Gilvary cases. If we were convinced that the court stated solely upon a construction of the workmen's compensation law, uninfluenced by the decisions following the supposed authority of the Rigsby case (*Texas & Pac. Ry. Co.* v. *Rigsby,* 241 U. S. 33 [36 Sup. Ct. 482, 60 L. Ed. 874] ), we should not hesitate to hold United States courts bound by such construction of the state statute. But the terms of the state compensation law, and the California decisions construing it, lead us to doubt that this is so.''

The court then quoted sections 6 (a), 6 (b) and 69 (a) of the California Workmen's Compensation Act. It then proceeded:

''Thus, by its plain terms, the compensation law embraces injuries to an employee circumstanced as was the petitioner in this case. Employers or employments in interstate com-

merce (the phrase used) obviously signifies situations covered by the Federal Employers' Liability Act which gives a right of action for breach. The phrase does not exclude injuries consequent upon violation of the Safety Appliance Acts in intrastate commerce and the remainder of the section evinces a determination that the compensation act shall govern the rights of employees in interstate commerce so far as permissible under the federal laws. As has been shown, these laws do not forbid its application in the instant case.''

The court then quoted the declared purpose and effect of the compensation act as announced in the cases of *Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686 [151 Pac. 398], and *Alaska Packers Assn.* v. *Industrial Acc. Com.,* 200 Cal. 579, 583 [253 Pac. 926]. It continued: ''We are not persuaded that if the state courts had thought that California was free to ordain a plan of workmen's compensation in lieu of an action for damages for breach of the duty imposed by the Safety Appliance Acts they would have restricted the scope of the Workmen's Compensation Act as was done in the Ballard and Walton cases.'' It concluded that there was no authoritative decision that its scope was so restricted and affirmed the judgment.

█ We are perforce constrained to agree with the analysis of the Supreme Court leading to the conclusion that the courts of this state had mistakenly adopted the view that the federal safety appliance acts afforded a remedy by action for damages for the breach of duty, similar to that prescribed by the Federal Employer's Liability Act. It remains to decide whether the Workmen's Compensation Act of California provides the remedy for injuries or death resulting from a violation of the Federal Safety Appliance and Boiler Inspection Acts. The language of section 69 (c) of the act plainly contemplates the extension of the provisions of the act to all cases of injury arising out of intrastate transportation, and as well to all cases of injury arising out of interstate transportation where its application is not repugnant to a federal law. █ That the remedy afforded by the provisions of the statute for death resulting from a violation of the Federal Safety Appliance and Boiler Inspection Acts, where the employee was performing duties connected with intrastate transportation at the time of the injury, is appropriate under those acts, is now definitely decided by

the Supreme Court of the United States in the case of *Tipton* v. *Atchison, Topeka & Santa Fe Ry. Co., supra.* That decision and our present conclusion that the terms of the Workmen's Compensation Act apply herein, should be sufficient to dispose of all of the objections of the petitioners to the exercise of its jurisdiction by the respondent commission.

The award is affirmed.

Langdon, J., Edmonds, J., and Curtis, J., concurred.

Rehearing denied.